UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHEN PARODA<br>5353 River Styx Road<br>Medina, Ohio 44256<br><br>   Plaintiff,<br><br>vs.<br><br>VAN-AM TOOL & ENGINEERING, LLC<br>c/o VCORP Services. LLC<br>1013 Centre Road, Suite 403-B<br>Wilmington, Delaware 19805<br><br>   Defendant. | CASE NO.<br><br>JUDGE<br><br><br><br><br>**COMPLAINT** |

For his Complaint against Defendant, Van-Am Tool & Engineering, LLC ("Van-Am"), Plaintiff, Stephen Paroda, alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C.§1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States ("U.S.").

2. The claims asserted herein are brought under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and the Pension Protection Act of 2006 ("PPA").

3. Van-Am is a U.S. company headquartered in the U.S., such that this Court has personal jurisdiction over Van-Am pursuant to the "national contacts test."

1

4. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(c) because Van-Am is subject to personal jurisdiction in this judicial district and, thus, qualifies as a resident under 28 U.S.C. §1391(c) (2).

## THE PARTIES

5. Mr. Paroda is an individual who resides and is domiciled in this judicial district in the County of Medina, City of Medina, Ohio.

6. Van-Am is a Delaware limited liability company with a principal place of business located in the City of St. Joseph, State of Missouri.

7. Van-Am conducts business throughout the U.S.

## BACKGROUND AND FACTUAL ALLEGATIONS

8. On or about May 13, 2016, Van-Am provided a written offer of employment to Mr. Paroda to become Van-Am's new CEO (the "Employment Offer").

9. On or about May 24, 2016, Mr. Paroda accepted the Employment Offer and became the CEO of Van-AM.

10. In neither the Employment Offer nor any other document provided to Mr. Paroda, did Van-Am advise Mr. Paroda of Van-AM's 401k plan or the terms for his eligibility to participate in such plan.

11. Mr. Paroda was employed by Van-Am until November 16, 2017.

12. At all times relevant to the claims herein, Van-Am had a 401K plan known as the "Van Am Tool & Engineering, LLC 401(k) Profit Sharing Plan & Trust" (the "Plan") through Voya Financial, which was sold to Van-Am by Compensation Benefit Planning, having its office at 740 NW Blue Pkwy., Suite 201, Lees Summit, MO 64086.

13. The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2) (A) and a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34) that was sponsored by Van-Am and administered by Van-Am.

14. The Plan is a qualified plan under 26 U.S.C. § 401, and is commonly referred to as a "401(k) plan."

15. Van-Am was an "administrator" as defined in 29 U.S.C. § 1002(16) (A).

16. The purpose of the Plan was to assist Van-Am's employees in saving for retirement and lowering the employee participants' taxable income.

17. Under the Plan, participants could direct a portion of their earnings to their account in the Plan and receive matching contributions from Van-Am as their employer. Participant contributions were to be held in trust and invested based on the investment options made available under the Plan, including the option of participant directed investments.

18. The Plan included elective deferrals, including Roth elective deferrals, employer matching contributions, employer profit sharing contributions and rollover contributions.

19. The Plan included no exclusions for "highly compensated employees."

20. Upon information and belief, the Plan provided that Van-Am would match 100% up to the first three 3% contributed by a Plan participant and 50% up to the 4th and 5th percent contributed by a Plan participant.

21. The Plan allowed elective deferrals up to the maximum amount allowed by law.

22. Also under the Plan, all participants share in allocations regardless of service completed during the Plan year or employment status on the last day of the Plan year.

23. Upon information and belief, all Van-Am employees were eligible to participate in the Plan during the period of Mr. Paroda's employment if they: (1) were at least eighteen (18)

3

years of age; and (2) had worked thirty (30) consecutive days of employment from their employment commencement date or, if they did not satisfy this condition, met a one (1) year of service requirement.

24. Mr. Paroda met the eligibility requirements for participation in the Plan

25. Under the Plan, an eligible employee who satisfied the eligibility requirements became a participant in the Plan ("Participant") for all contribution types as of the first day of the Plan Year quarter coinciding with or next following the date the eligibility requirements were met.

26. Mr. Paroda never opted out of the Plan.

27. Under the Plan, distributions from the Plan are to be made "as soon as administratively feasible following severance of employment."

28. In 2016, Van-Am made at least twenty-two (22) late deposits of employee contributions into the Plan.

29. Upon information and belief, Van-Am had a pattern and practice of making late deposits of employee contributions to the Plan from the time it acquired the company in or around 2012-2013.

30. Further upon information and belief, the magnitude of the late deposits was even greater for the years prior to 2016.

31. Despite Van-Am's CFO, Todd Lawrence, having knowledge of the late deposits issue since at least 2015, Van-Am took no action to correct the issue and file an IRS Form 550 until September or October, 2017, which was for the 2016 Plan year only.

4

32. Upon information and belief, Van-Am's former HR Director, Marianne Hughes, asked Mr. Paroda and other Plan participants to sign and back date an opt-out form when Van-Am was trying to self-correct the late deposit issue for 2016.

33. Upon information and belief, Ms. Hughes offered no consideration to Plan participants in exchange for their signing and back dating opt-out forms.

## COUNT ONE

**(Violation of ERISA Disclosure and Notification Requirements)**

34. Mr. Paroda restates the allegations in paragraphs 1 through 33 as if fully rewritten herein.

35. Under 29 CFR § 2520.104b-1(a), Van-Am was required to "disclose certain material, including reports, statements, notices, and other documents, to participants, beneficiaries and other specified individuals."

36. In fulfilling this disclosure requirement, Van-Am, as the administrator of the Plan, must furnish all such required material using "measures reasonably calculated to ensure actual receipt of the material by plan participants, beneficiaries and other specified individuals. Material which is required to be furnished to all participants covered under the plan and beneficiaries receiving benefits under the plan (other than beneficiaries under a welfare plan) must be sent by a method or methods of delivery likely to result in full distribution." 29 CFR § 2520.104b-1(b).

37. In addition, any use of electronic media to fulfill the disclosure requirement must include "appropriate and necessary measures reasonably calculated to ensure that the system for furnishing documents" results in "actual receipt of transmitted information (e.g., using return-receipt or notice of undelivered electronic mail features, conducting periodic reviews or surveys to confirm receipt of the transmitted information)." 29 CFR § 2520.104b-1(c)(1)(i).

38. All Plan participants must automatically be provided with a summary plan description ("SPD") by Van-Am within ninety (90) days of become eligible under the Plan pursuant to 29 CFR § 2520.104b-2.

39. ERISA§ 101(f) and 29 CFR § 2520.101-5 require that Van-Am automatically provide to all Plan participants, including Mr. Paroda, an Annual Funding Notice, which provides basic information about the status and financial condition of the Plan.

40. ERISA also requires that Van-Am automatically provide periodic pension benefit statements to all Plan participants, including Mr. Paroda, at least quarterly or, alternatively Van-Am may provide notice of the availability of the pension benefit statement and the ways to obtain such statement. See ERISA § 105.

41. Upon Mr. Paroda's termination of employment on November 16, 2017, Van-Am was required to provide to Mr. Paroda a Statement of Accrued and Nonforfeitable Benefits. See ERISA § 209.

42. Van-Am was required to provide to all Plan participants, including Mr. Paroda, Participant Plan and Investment Fee Disclosures, including, general information about the Plan and potential administrative and individual costs, as well as a "comparative chart" of key information about plan investment options, at least once in any fourteen (14) month period, and at least on a quarterly basis, a statement of the dollar amount of administrative and individual fees that were charged to their accounts. See 29 CFR § 2550.404a-5.

43. Van-Am was further required to provide to all Plan participants, including Mr. Paroda, an Automatic Enrollment Notice, which discloses the automatic enrollment feature to participants, including each participant's right to make their own deferral election.
6

44. Van-Am was also required to provide to all Plan participants, including Mr. Paroda, a Summary Annual Report (SAR"), which provides a Narrative summary of the Form 5500. See 29 CFR § 2520.104b-10(d).

45. Van-Am breached its ERISA disclosure and notification requirements by providing none of the notices and documents required to be provided to Mr. Paroda.

46. In fact, Van-Am did not even disclose the existence of the Plan to Mr. Paroda when he was hired as Van-Am's CEO and provided no Plan documents to Mr. Paroda, either in hard copy or electronically, until after Mr. Paroda's employment was terminated and Mr. Paroda filed employment arbitration claims against Van-Am.

47. As a direct and proximate result of Van-Am's breach of its disclosure and notification requirements under ERISA, Mr. Paroda has suffered damages, including lost investment and deferral opportunities, lost benefits, contributions and profit-sharing under the Plan in amounts to be determined at trial.

## COUNT TWO

### (Breach of Fiduciary Duties)

48. Mr. Paroda restates the allegations in paragraphs 1 through 47 as if fully rewritten herein.

49. ERISA imposes strict fiduciary duties of loyalty and prudence upon Van-Am as fiduciary of the Plan. 29 U.S.C. § 1104(a)(1) states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) For the exclusive purpose of (i) Providing benefits to participants and their beneficiaries; and(ii) Defraying reasonable expenses of administering the plan;

> (B) With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.

50. "The fiduciary obligations of the [plan's fiduciaries] to the participants and beneficiaries of an ERISA plan are those of trustees of an express trust—the highest known to the law." *LaScala v. Scrufari*, 479 F.3d 213, 219 (2nd. Cir. 2007), quoting, *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2nd. Cir. 1982).

51. Fiduciaries must act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). They must also act with the "care, skill, prudence, and diligence" that would be expected in managing a plan of similar scope. 29 U.S.C. § 1104(a)(1)(B).

52. Van-Am was a fiduciary of the Plan under 29 U.S.C. §§ 1002(21) and/or 1102(a)(1).

53. 29 U.S.C. § 1104 imposed fiduciary duties of prudence and loyalty upon Van-Am in its administration of the Plan.

54. The scope of the fiduciary duties and responsibilities of Van-Am included acting with the care, skill, diligence, and prudence required by ERISA.

55. Van-Am failed to furnish all required notices, documents and reports to Mr. Paroda under ERISA, subjecting Van-Am to *per diem* statutory penalties for each day it failed to provide the required notices, documents and reports

56. By failing to provide the notices, documents and reports required by ERISA and by its pattern and practice of making late deposits to the Plan, Van-Am failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with

8

such matters would have used in the conduct of an enterprise of like character and with like aims, thereby breaching its duties under 29 U.S.C. § 1104(a)(1)(B).

57. Van-Am is liable under 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), to make good to the Plan, and Mr. Paroda individually, the losses resulting from the aforementioned breaches.

58. Mr. Paroda incurred losses in an amount to be proven at trial as a direct and proximate result of Van-Am's breaches of fiduciary duties described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Stephen Paroda, requests judgment against Defendant, Van-Am Tool & Engineering, LLC, as follows:

A. As to Count One, for statutory *per diem* damages and compensatory damages in an amount to be established at trial, which is sufficient to fully compensate Mr. Paroda for his lost investment and deferral opportunities, lost benefits, contributions and profit-sharing under the Plan;

B. As to Count Two, for compensatory damages in an amount to be established at trial, which is sufficient to fully compensate Mr. Paroda for his lost investment and deferral opportunities, lost benefits, contributions and profit sharing under the Plan, as well as the diminution of value of the Plain resulting from Van-Am's breach of its fiduciary duties.

C. As to all counts, Mr. Paroda's reasonable attorney's fees and court costs;

D. As to all counts, punitive damages to the extent permitted by applicable law in an amount to be determined at trial sufficient to punish and deter Van-Am's unlawful conduct in the future; and

E. As to all counts, such other legal and/or equitable relief to which Mr. Paroda may be entitled.

November 15, 2019

        Respectfully submitted,

        GRUBB & ASSOCIATES, LPA

        */s/ Mark E. Owens*
        Natalie F. Grubb (0062596)
        Mark E. Owens (0068335)
        437 W. Lafayette Road, Suite 260-A
        Medina, Ohio 44256
        Ph: (330) 725-7252
        Fax: (330) 723-1095
        E-Mail: officemgr@grubbandassoc.com
        *Attorneys for Plaintiff, Stephen Paroda*